NATIONAL LABOR RELATIONS BOARD, Plaintiff,

v.

WYMAN–GORDON COMPANY and Robert W. Stoddard as Chairman of the Board of Directors and Chief Executive Officer of Wyman-Gordon Company, Defendants.

Civ. A. No. 67–260–G.

United States District Court
D. Massachusetts.

June 30, 1967.

Robert Fuchs, Boston, Mass., Dept. of Labor, Bernard M. Dworski, Washington, D. C., N. L. R. B., for plaintiff.

Quentin O. Young, Herrick, Smith, Donald, Farley & Ketchum, Boston, Mass., for defendants.

OPINION

GARRITY, District Judge.

The plaintiff, National Labor Relations Board ("Board"), seeks enforcement of a subpoena *duces tecum* directed to the defendant Robert W. Stoddard, as president of the Wyman-Gordon Company ("Company"), or alternatively, a mandatory injunction compelling the defendant Company to comply with the election rule promulgated by the Board on February 4, 1966 in Excelsior Underwear, Inc., 156 NLRB No. 111, requiring an employer to file with the Board's Regional Director, in the Region where the union representation petition is pending, a list of the names and addresses of all employees eligible to vote in the representation election (*"Excelsior list"*). The jurisdiction of this court is asserted on the basis of §§ 9(c) and 11(2) of the National Labor Relations Act, 29 U.S.C. §§ 159(c) and 161(2), and on the basis of 28 U.S.C. § 1337.

Since May 16, 1962 the Board has conducted five elections among the defendant Company's employees to determine whether they wished to be represented by a union. None of the following unions that participated in various of the elections was able to gain a majority vote of the employees: the United Automobile Workers of America, AFL–CIO ("Autoworkers"), the International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmith, Forgers and Helpers, AFL–CIO ("Boilermakers"), and the United Steelworkers of America, AFL–CIO ("Steelworkers").

The last election was held on September 29, 1966 at the petition of the Boilermakers, and with the intervention of the Steelworkers.[1] Prior to this election, counsel for the Company notified the Board that the Company refused to consent to an election because under the Board's Consent Election agreements an employer contracts to comply with all Board rules and regulations, and the Company did not intend to comply with

the *Excelsior* rule, which it contended was invalid. Both unions filed timely objections to the election based upon the Company's refusal to comply with the Regional Director's direction to submit an *Excelsior* list. On October 19, 1966 the Regional Director upheld these objections, set the election aside, and directed that another election be held.

On December 2, 1966 the Regional Director notified the Company that the election was to be held on December 29, 1966 and requested that an *Excelsior* list be filed no later than December 9, 1966. The Company again failed to file the list and, at the request of the unions, the election was postponed. On December 27, 1966 the Regional Director issued a subpoena *duces tecum* directing the defendant to provide the Board with the Company's personnel and payroll records or, in lieu thereof, with an *Excelsior* list. On December 30, 1966 the Company filed a motion to quash the subpoena, which the Board denied on January 10, 1967. Upon the defendant's continued failure and refusal to comply with the subpoena, the Board instituted this action.

The enforceability of the Board's *Excelsior* rule has been the subject of several district court decisions. The majority, including N. L. R. B. v. Wolverine Industries, E.D.Mich., 1966, 64 LRRM 2060, and N. L. R. B. v. Rohlen, N.D.Ill., 1967, 64 LRRM 2168, have ordered compliance with the Board subpoena. The minority view, denying enforcement of the Board subpoena, is represented by N. L. R. B. v. Hanes Hosiery Division-Hanes Corp., M.D.N.Car., 1966, 63 LRRM 2513, and N. L. R. B. v. Montgomery Ward & Co., M.D.Fla., 1966, 64 LRRM 2061. As yet, the question has not been decided by a court of appeals, but appeals are pending from the *Hanes* and *Rohlen* decisions and perhaps from others. The major issue presented has been whether an *Excelsior* list is embraced within the term "evidence" as it is used

---

1. Approximately 1700 employees voted in this election. 226 voted for the Boiler-

makers, 555 voted for the Steelworkers, and 903 voted against both unions.

in §§ 11(1) and 11(2) of the National Labor Relations Act, 29 U.S.C. §§ 161 (1) and 161(2).

When the Board seeks enforcement of a subpoena in a district court pursuant to § 11(2), "the scope of permissible judicial inquiry in deciding whether such an application should be granted or denied * * * is extremely limited." N. L. R. B. v. C. C. C. Associates, Inc., 2 Cir., 1962, 306 F.2d 534, 538. The court has jurisdiction to enforce the subpoena if the Board was acting within its statutory authority in issuing it and if the material sought is not "plainly incompetent or irrelevant to any lawful purpose." Endicott Johnson Corp. v. Perkins, 1943, 317 U.S. 501, 509, 63 S.Ct. 339, 343, 87 L.Ed. 424; United States v. Morton Salt, 1950, 338 U.S. 632, 642, 70 S.Ct. 357, 94 L.Ed. 401.[2]

A preliminary issue in this case is the validity of the *Excelsior* rule, which the defendants challenge on the ground that the Board in adopting it did not comply with the requirements of the Administrative Procedure Act, 5 U.S.C. § 1001 et seq. The Supreme Court has said that administrative agencies, exercising their "informed discretion" may proceed by general rule or by *ad hoc* decisions. Securities and Exchange Commission v. Chenery Corp., 1947, 332 U.S. 194, 200–203, 67 S.Ct. 1575, 91 L.Ed. 1995. When the Board elects to proceed by rule of decision, as it did in *Excelsior*, the publication and rulemaking provisions of §§ 3(a) and 4 of the Administrative Procedure Act, 5 U.S.C. §§ 1002(a) and 1003, do not apply. See N. L. R. B. v. A. P. W. Products Co., 2 Cir., 1963, 316 F.2d 899, 903–906; N. L. R. B. v. E. & B. Brewing Co., Inc., 6 Cir., 1960, 276 F.2d 594, 598, cert. denied, 366 U.S. 908, 81 S.Ct. 1083, 6 L.Ed.2d 234. Nor do the adjudication provisions of §§ 5, 7

and 8 of the Administrative Procedure Act, 5 U.S.C. §§ 1004, 1006 and 1007, apply, since proceedings involving the "certification of employee representatives" are expressly exempted from these provisions by § 5(6). The court believes, therefore, that the Board acted within its authority in promulgating the *Excelsior* rule and that it is valid.

Was the Board acting within its authority in issuing the subpoena in the present case? It has authority to issue subpoenas under § 11(1) of the National Labor Relations Act, 29 U.S.C. § 161(1), if the "evidence whose production is required does * * * relate to any matter under investigation" and does "describe with sufficient particularity the evidence whose production is required." Clearly the information sought is described with the requisite "particularity" and the issue of union representation and the regulation of the election are "matter[s] under investigation" by the Board. National Labor Relations Act § 9(c), 29 U.S.C. § 159(c). Whether or not the *Excelsior* list is "evidence" is a closer question.

Standard definitions of "evidence", i. e., whatever tends to prove or disprove the existence of something or make clear the truth or falsehood of something, are not very helpful because the "something" at issue in this case is a group preference rather than a demonstrable fact. Also, the Board's function here is far different from that of the traditional, passive fact finder. The Board is conducting an active representation investigation in which the regulation of an election is an integral part. The ultimate issue to be resolved by the investigation is whether the Company's employees want to be represented by the Steelworkers, the Boilermakers, or no union. The Board has determined that an *Excelsior* list of the names and ad-

---

**2.** See Cudahy Packing Co. v. N.L.R.B., 10 Cir., 1941, 117 F.2d 692, at page 694: "When an application is filed with a District Court for an order requiring obedience to a subpoena it may inquire only to ascertain that a proceeding is pending before the Board of which it has jurisdiction and that the evidence sought relates to or touches the matter under investigation. If these facts are found to exist, it is the duty of the court to order obedience to the subpoena."

dresses of all employees eligible to vote in the election, to be made available to the unions to facilitate the communication of election issues, is necessary and relevant to the resolution of that ultimate issue.

 Although courts which have enforced Board subpoenas of material sought in representation proceedings have not discussed specifically whether the material was evidence, they have impliedly found that it was, e. g., N. L. R. B. v. Northern Trust Co., N.D.Ill., 1944, 56 F.Supp. 335, 336, aff'd 7 Cir. 1945, 148 F.2d 24; N. L. R. B. v. Duval Jewelry Co., Inc., 5 Cir., 1958, 257 F.2d 672, 673. In Cudahy Packing Co. v. N. L. R. B., supra, the court enforced a Board subpoena of a company's personnel and payroll records so that the Board could compile a list of the names of the employees eligible to vote in an election. In the instant case, the Board subpoena demands production of the same type of records to compile the same type of list, the only addition being the addresses of the employees.[3] It is difficult to see why addition of the employees' addresses should change the result. The court concludes that, in the context of § 11 of the Act, "evidence" means not only proof at a hearing but also books and records and other papers which will be of assistance to the Board in conducting a particular investigation.

 The question remains whether the court in its discretion should order compliance with the Board's subpoena in this case. One of the duties of the Board in administering the Act is to determine expeditiously, Boire v. Greyhound Corp., 1963, 376 U.S. 473,

477–479, 84 S.Ct. 894, 11 L.Ed.2d 849, whether a particular group of employees wish to be represented by a union. Implicit in this duty is the responsibility of assuring that the employees' choice is as enlightened as possible, made with fair access to the arguments for and against each alternative. To require an employer to provide a list of the names and addresses of the employees eligible to vote seems a reasonable way of assuring the "candidates" fair access to the "electorate." This is particularly evident in a case such as this where there are over 1700 employees.

 On balance, the Company has no substantial interest in refusing to provide such a list. Furnishing the list would not impose a heavy burden upon it since it already furnishes a list of the names of its employees; adding their addresses would present little difficulty. Even assuming that the defendant has standing to assert its employees' right to privacy, which is debatable, the mere disclosure of employees' addresses is not an invasion of their right to privacy nor can it reasonably be expected to produce such an invasion.[4]

 The Company contends among other things that a list of the names and addresses of 1700 employed persons is valuable and that enforcement of the Excelsior rule would compel it to violate § 302(a) of the National Labor Relations Act, 29 U.S.C. § 186(a), which makes it a crime for any employer to deliver a "thing of value" to anyone seeking to represent his employees. The possible value of such a list as a mailing list gives this contention some surface plausibility. But it must be rejected as

3. In the *Cudahy* case it is likely that the company had the alternative of simply providing a list of the names of the eligible employees, just as in this case the Company has the alternative of providing the *Excelsior* list itself.

4. In view of the court's findings, there is no need to pass upon the Board's alternative application for a mandatory injunction "as an aid in the administration of the statute", Walling v. Brooklyn Braid Co., 2 Cir., 1945, 152 F.2d 938, 941. The

court notes, however, that the cases relied upon by the plaintiff, e. g., United States v. Shafer, 4 Cir., 1956, 229 F.2d 124, cert. denied, 1956, 351 U.S. 931, 76 S.Ct. 788, 100 L.Ed. 1460, and Walling v. Brooklyn Braid Co., supra, did not involve mandatory injunctions, and that cases in which they have been ordered in aid of federal agencies appear to be distinguishable, e. g., Porter v. Lee, 1946, 328 U.S. 246, 247, 251, 66 S.Ct. 1096, 90 L.Ed. 1199.

patently contrary to the intent of Congress in enacting the statute. Zentner v. American Federation of Musicians, S.D.N.Y., 1965, 237 F.Supp. 457, 463. The obvious purpose of the statute was to protect employees from harm, not from help.

Accordingly, it is ordered that the defendants comply with the plaintiff's subpoena either by producing personnel and payroll records containing the names and addresses of all employees eligible to vote in the representation election or by filing with the plaintiff a list of the names and addresses of all such employees.